United States District Court
Northern District of California

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

San Francisco Division

11

ANTONIO LOERA, JR., et al.,

12

Plaintiffs,

13

v.

14

COUNTY OF ALAMEDA,

15

Defendant.

16

Case No. 23-cv-00792-LB

**ORDER GRANTING MOTION FOR CONDITIONAL CERTIFICATION**

Re: ECF No. 16

17

## INTRODUCTION

18      This is an unpaid-wages dispute under the Fair Labor Standards Act (FLSA). The plaintiffs are

19  current and former Sheriff's safety aides working for the Alameda County Sheriff's Office at the

20  Oakland International Airport. They sued Alameda County for failing to pay them overtime wages

21  for time they spend performing required work before and after their shifts. This work includes

22  attending "musters" to be briefed on security issues, putting on their body cameras and uniforms,

23  and being driven to and from their posts at the airport.[1]

24      The named plaintiffs, Antonio Loera, Jr. and Charlotte Daniels, now move for conditional

25  certification of an FLSA "collective" consisting of the Sheriff's safety aides at the airport.[2] The

26

27  [1] Complaint – ECF No. 1. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

28  [2] Mot. – ECF No. 16-1.

1   defendants respond that the plaintiffs have not met their burden to support certification and that, if

2   the motion is granted, the proposed notice (to be distributed to the collective members) is deficient

3   in various ways.[3] The court grants the motion for certification and orders some changes to the

4   notice.

5   <div align="center">**STATEMENT**</div>

6       Mr. Loera has worked as a Sheriff's safety aide at the Oakland International Airport since July

7   2005. Ms. Daniels had the same job from November 2010 to September 2021.[4] Twenty other

8   plaintiffs have consented to join the lawsuit so far.[5] The proposed collective is defined as "[a]ll

9   Sheriff's Safety Aides and individuals in similar or related positions who worked for the . . .

10  Alameda County Sheriff's Office in and around the Oakland International Airport at any time

11  three years prior to the filing of [the] Complaint through the present."[6] The defendant is Alameda

12  County, which is the legal employer of employees of the Alameda County Sheriff's Office.[7]

13      Sheriff's safety aides perform security work at the airport.[8] They "are primarily assigned to a

14  fixed or rotating post to observe specific areas and activities and to report those observations,

15  either verbally or in writing, to the sworn officers of the Sheriff's Office."[9]  Since 2008, the

16  Sheriff's Office has used an "alternative work schedule" for the safety aides: they "typically have

17  been scheduled to work three 11.5-hour shifts and one shorter 5.5-hour shift" each week. They

18  "are typically scheduled to work 40 hours and are typically compensated for 40 hours per

19  workweek."[10]

20      The defendant has allegedly "maintained a policy, plan, and/or practice" of requiring Sheriff's

21  safety aides to work "uncompensated overtime" before and after their shifts. Specifically, they are

22

23  [3] Opp'n – ECF No. 25.

24  [4] Compl. – ECF No. 1 at 2 (¶¶ 3–4).

    [5] Consent-to-Join Forms – ECF Nos. 1-1 (at 5), 7, 9, 27.

25  [6] Compl. – ECF No. 1 at 3 (¶ 8).

26  [7] *Id.* at 2–3 (¶ 5).

    [8] *Id.* at 3 (¶ 9).

27  [9] Sullivan Decl. – ECF No. 25-1 at 2 (¶ 4).

28  [10] Compl. – ECF No. 1 at 3 (¶ 10).

required to arrive at least fifteen minutes before their scheduled shifts to "perform job duties" such as (1) attending a "'muster' meeting where they [are] briefed on recent incidents and advised of issues affecting upcoming or future shifts," (2) picking up their body cameras and radios, (3) putting on their uniform (if they did not arrive wearing it), and (4) "[b]oard[ing] a van to be driven to their posts in the airport." After their shifts, they are again not compensated for fifteen to thirty minutes spent being driven from their airport posts back to the muster station and then returning their equipment. (This shift-rotation system is a "one-for-one-system" in which each safety aide being picked up at the end of a shift is replaced by the next safety aide being driven from the muster station.)[11]

"Over the years," safety aides have complained to the defendant about this uncompensated time. In November 2022, a Sheriff's technician emailed Alameda County Sheriff Yesenia Sanchez directly about "the issue," and she responded that she had asked someone "to look into the matter."[12]

In support of their motion for conditional certification, the plaintiffs submitted eleven declarations. These declarations — from the named plaintiffs and other current and former Sheriff's safety aides — are consistent in their content. The declarants thus provide evidence from multiple safety aides that (1) their compensated shifts typically amounted to forty hours per week, (2) they were required to arrive at least fifteen minutes before their shifts for the muster meeting and other tasks, (2) after their shifts, they had to ride back to the muster station and drop off their equipment, which took at least fifteen minutes, (3) they were not compensated for this pre- and post-shift time, (4) they observed other safety aides completing the same pre- and post-shift routine, and (5) some of them complained about not being paid for that time, but they were told in effect that they would not be paid for it.[13] Mr. Loera's declaration also attaches one of his paystubs and the safety aides' collective bargaining agreement.[14] Given that the plaintiffs' motion does not

---

[11] *Id.* at 3–4 (¶¶ 11–12).

[12] *Id.* at 4–5 (¶ 14).

[13] Safety Aide Decls. – ECF Nos. 16-3 to -13.

[14] Exs. A–B to Loera Decl. – ECF No. 16-3 at 4–234.

United States District Court
Northern District of California

cite the collective bargaining agreement, the defendant's alleged pre- and post-shift policy or practice is presumably not part of the agreement.[15]

The complaint has one claim: violation of the overtime-wage provision of the FLSA, 29 U.S.C. § 207.[16] The case is at an early stage; the pleadings settled less than one month before the present motion was filed.[17] The court has federal-question jurisdiction. 28 U.S.C. § 1331. All parties consented to magistrate-judge jurisdiction.[18] *Id.* § 636(c). The court held a hearing on July 13, 2023.

## ANALYSIS

The plaintiffs move for conditional certification of their proposed FLSA collective. They contend that they have satisfied their (low) burden at this stage because, between their complaint's allegations and their declarations, it is plausible that the proposed collective members are similarly situated.[19] The plaintiffs also submitted a proposed notice, which they contend is sufficient.[20] The court grants preliminary certification and orders some changes to the notice.

### 1.  Motion for Conditional Certification

### 1.1  Legal Standard

"The FLSA provides employees with a private right of action to enforce the minimum wage and overtime provisions of the Act." *Monplaisir v. Integrated Tech Grp.*, No. C 19-01484 WHA, 2019 WL 3577162, at *2 (N.D. Cal. Aug. 6, 2019). It also authorizes "opt-in" representative actions (referred to as "collective actions") where the complaining parties are "similarly situated" to other employees. 29 U.S.C. § 216(b); *see generally Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 448 (2016). Under § 216(b), "workers may litigate jointly if they (1) claim a violation of the

---

[15] Collective Bargaining Agreement, Ex. B to Loera Decl. – ECF No. 16-3 at 19 (¶¶ 7.A–.B), 26 (¶ 7.R) (relevant overtime and workweek provisions).

[16] *Id.* at 5–6 (¶¶ 17–25).

[17] Answer – ECF No. 10 (filed Apr. 21, 2023); Mot. – ECF No. 16-1 (filed May 12, 2023).

[18] Consents – ECF Nos. 8, 11.

[19] Mot. – ECF No. 16-1 at 10–12.

[20] *Id.* at 12–16.

United States District Court
Northern District of California

FLSA, (2) are 'similarly situated,' and (3) affirmatively opt in to the joint litigation, in writing." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018).

Because § 216(b) does not specify the "process for evaluating the propriety of a collective proceeding as litigation unfolds," courts have adopted a two-step process in which the plaintiff moves for "preliminary" certification early in the case and, later, the defendant may move for decertification. *Id.* at 1100–02, 1108–10. At issue here is the first step only, but for clarity, the court will explain both.

Although the two steps differ procedurally, the ultimate issue for each is whether the employees in question are "similarly situated." FLSA plaintiffs "are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 947–48 (9th Cir. 2019) (cleaned up), *disapproved of on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022); *Campbell*, 903 F.3d at 1114. This may be true where, for example, the employees "were together the victims of a single decision, policy, or plan." *Pardo v. Papa, Inc.*, No. 21-cv-06326-RS, 2022 WL 5225859, at *1 (N.D. Cal. Oct. 5, 2022) (cleaned up).

The burden is on the plaintiff to show that the proposed collective members are similarly situated. *Pardo*, 2022 WL 5225859, at *1. (Different standards apply to the burdens at each step, as explained next.) "Significantly, as long as the proposed collective's factual or legal similarities are material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment." *Senne*, 934 F.3d at 948 (cleaned up).

At the first step, which is usually "at some point around the pleading stage," the plaintiffs "move for 'preliminary certification' of the collective action." *Campbell*, 903 F.3d at 1100. "'The sole consequence' of a successful motion for preliminary certification is 'the sending of court-approved written notice' to workers who may wish to join the litigation as individuals." *Id.* at 1101 (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)). (Workers may opt in before preliminary certification, though, because "preliminary certification is neither necessary nor sufficient for the existence of a collective action." *Id.* (cleaned up).)

<div style="writing-mode: vertical-rl">United States District Court
Northern District of California</div>

"At this early stage," the plaintiff's required showing "is lenient." *Monplaisir*, 2019 WL 3577162, at *2 (cleaned up). Before *Campbell*, courts described the required showing as "some factual basis beyond the mere averments in their complaint for the class allegations." *Id.* (cleaned up); *see Pardo*, 2022 WL 5225859, at *1 ("Courts primarily make this initial determination based on pleadings and affidavits and may grant conditional certification on nothing more than substantial allegations[.]") (cleaned up). For example, a plaintiff could meet his (low) burden by supporting the complaint's allegations "with declarations from himself and other [employees]" that "describe similar FLSA violations by [the employer]." *Monplaisir*, 2019 WL 3577162, at *2.

In *Campbell*, though, the Ninth Circuit explained that at the first step, "the district court's analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence." 903 F.3d at 1109; *Jimenez v. Haxton Masonry, Inc.*, No. 18-cv-07109-SVK, 2021 WL 1041608, at *3 (N.D. Cal. Feb. 11, 2021). The plaintiff's burden is "sometimes articulated as requiring 'substantial allegations,' sometimes as turning on a 'reasonable basis,' but in any event [is] loosely akin to a plausibility standard, commensurate with the stage of the proceedings." *Campbell*, 903 F.3d at 1109. Thus, even if the defendant "submits competing declarations," that "will not as a general rule preclude conditional certification." *Jimenez*, 2021 WL 1041608, at *3 (collecting cases).

As noted, "[a] grant of preliminary certification results in the dissemination of a court-approved notice to the putative collective action members, advising them that they must affirmatively opt in to participate in the litigation." *Campbell*, 903 F.3d at 1109. "Denial of preliminary certification," on the other hand, "may be without prejudice and may be revisited by the district court after further discovery." *Id.* If denial is with prejudice and "opt-in plaintiffs have already joined, they will be dismissed without prejudice to the merits of their individual FLSA claims." *Id.*

The second step of the certification process "occurs when discovery is complete and the case is ready to be tried. The party opposing collective certification may then move for decertification." *Monplaisir*, 2019 WL 3577162, at *2. The ultimate issue is again whether the proposed collective members are similarly situated. *Campbell*, 903 F.3d at 1109. But at this step, the court "take[s] a

more exacting look at the plaintiffs' allegations and the record." *Id.* "[D]ecertification can resemble a motion for partial summary judgment on the 'similarly situated' question, and may be combined with cross-motions for summary judgment." *Id.*

At least where "decertification overlaps with the merits of the underlying FLSA claims, the summary judgment standard" applies to the motion for decertification. *Id.* at 1117. An example of such overlap is where the employees allege an "[employer]-wide policy discouraging the reporting of overtime" — that allegation both "raise[s] a similarity of fact or law whose disposition would advance the litigation" and "go[es] directly to the merits of the individual [employees'] claims, as proving the policy at trial is essential to [an] FLSA theory." *Id.* at 1119. In this context, plaintiffs satisfy their burden at the second step "with evidence creating a genuine dispute of material fact," and the other ordinary summary-judgment rules apply. *Id.* (cleaned up).

If the motion for decertification is granted, "[t]he opt-in plaintiffs are dismissed without prejudice to the merits of their individual claims, and the original plaintiff is left to proceed alone." *Id.* at 1110. If the motion is denied, "the collective proceeds toward trial, at least on the questions justifying collective treatment." *Id.*

Overall, "the proper means of managing a collective action," including "the timing of motions [and] the extent of discovery before decertification is addressed," is "largely a question of 'case management,' and thus [is] a subject of substantial judicial discretion." *Id.* And "the two-step process, culminating in a decertification motion on or after the close of relevant discovery, has the advantage of ensuring early notice of plausible collective actions, then eliminating those whose promise is not borne out by the record." *Id.*

### 1.2   Application

The court grants the motion for conditional certification. The complaint's allegations, by themselves, are too conclusory to meet the plaintiff's lenient burden, at least with respect to the defendant's alleged unlawful policy or practice. But the declarations are more than enough to make it plausible that the proposed collective members share "similar issue[s] of law or fact material to the disposition of their FLSA claims." *Senne*, 934 F.3d at 947–48. Specifically, it is at least plausible that each collective member is subject to a single policy or practice requiring them

to complete an uncompensated muster and transportation process each day they work at the airport. *Pardo*, 2022 WL 5225859, at *1 (the employees "were together the victims of a single decision, policy, or plan") (cleaned up).

The defendant counters that the plaintiffs have not adequately alleged a common FLSA violation because, for example, alleging that the defendant "permitted [safety aides] to attend 'muster meeting[s],' pick up their body cameras, and board a van to be driven to their posts does not point to an unlawful policy or practice that requires them to do so off-the-clock."[21] But for purposes of this certification motion, the plaintiffs need only "claim a violation of the FLSA" and show that they are "similarly situated." *Campbell*, 903 F.3d at 1100. Also, "documentary evidence" of the relevant policy "is [not] required at this stage." *Monplaisir*, 2019 WL 3577162, at *3. The complaint claims an FLSA violation, and by submitting evidence that they adhered to a pre- and post-shift routine established by their employer for which they were not compensated, the plaintiffs have plausibly shown that they "were together the victims of a single decision, policy, or plan." *Pardo*, 2022 WL 5225859, at *1.

### 2.  Notice

The issue then is the form of notice. The parties dispute numerous aspects of the proposed notice submitted by the plaintiffs. After the defendant filed their opposition brief, the parties met and conferred and the plaintiffs agreed to make one change proposed by the defendant (adding a line saying that the defendant disputes the plaintiffs' claims). The defendant's other proposed changes remain in dispute.[22] The court resolves those proposals in turn.

"Once a collective class has been conditionally certified, potential FLSA collective members are entitled to 'accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions as to whether to participate.'" *Droesch v. Wells Fargo Bank*,

---

[21] Opp'n – ECF No. 25 at 5–6.

[22] *Id.* at 6–11; Reply – ECF No. 26; Terp Decl. – ECF No. 26-1 at 2 (¶ 3); Notice, Ex. A to *id.* – ECF No. 26-1 at 4–6 (operative proposed notice); Consent Form, Ex. 2 to Smith Decl. – ECF No. 16-2 at 6–7.

N.A., No. 20-cv-06751-JSC, 2021 WL 1817058, at *4 (N.D. Cal. May 6, 2021) (quoting

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). "[T]he form and timing of notice

. . . is largely a question of 'case management,' and thus [is] a subject of substantial judicial

discretion." *Campbell*, 903 F.3d at 1110.

First, the court denies the defendant's request for a third-party administrator to distribute the

notice — unless the defendant agrees to pay for the third-party administrator. "Both sides cite

district court cases deciding whether a third party administrator is desirable, with no discernible

pattern underlying the decisions." *Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1207

(N.D. Cal. 2013). "Requiring a third-party administrator here would drive up [the] [p]laintiffs'

costs," and the court has no reason to believe "that [the] plaintiffs' counsel will violate their

professional responsibilities." *Id.* The plaintiffs' counsel may thus distribute the notice, unless the

defendant agrees to pay for the administrator.

Second, the parties dispute whether the notice should be distributed to all current and former

safety aides who have worked for the defendant within the last three years, or to only those who

have worked within the last two years.

"The typical statute of limitations for an FLSA violation is two years." *Johnson v. Serenity

Transp., Inc.*, No. 15-cv-02004-JSC, 2016 WL 1569984, at *3 (N.D. Cal. Apr. 19, 2016) (citing 29

U.S.C. § 255(a)). But "the statute of limitations is extended to three years where the violation is

willful." *Id.* (citing § 255(a)). "An employer's violation is willful, triggering the longer limitations

period, when the employer knowingly violated the FLSA or if it 'disregarded the very possibility

that it was violating the statute.'" *Id.* (quoting *Alvarez v. IBP, Inc.*, 339 F.3d 894, 908 (9th Cir.

2003)). "Where there are allegations of willfulness, courts generally decline to limit the potential

class to the two-year limitations period at the conditional certification stage, finding the

determination better suited to resolution via summary judgment, with the benefit of a more

fulsome record." *Id.* (collecting cases).

Here, the willfulness allegations are plausible. The complaint and declarations allege that

safety aides complained to the Alameda County Sheriff's Office about the failure to pay overtime

wages.[23] It is thus plausible that the defendant knowingly violated the FLSA. *Id.* The statute-of-limitations issue has not been determined yet, and at least until that happens, safety aides within the proposed three-year period may be noticed and may opt in.

Third, the parties dispute whether certain language in the first paragraph of the notice gives the improper impression that the court isn't neutral with respect to the merits of the case. That language reads: "Please note the Court has not ruled on the merits of the lawsuit. The Court has only ruled it is important that you be notified of the existence of the lawsuit so you can determine whether you wish to join."[24] "In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffmann-La Roche Inc.*, 493 U.S. at 174. The court orders that the word "important" be taken out of the language at issue so that it reads as follows: "Please note the Court has not ruled on the merits of the lawsuit. The Court has only ordered that you be notified of the existence of the lawsuit so you can determine whether you wish to join."

Fourth, the defendant contends that the notice should be mailed to class members once, and not emailed and texted to them in addition. In the plaintiffs' reply brief, they recited in the introduction and conclusion that electronic notice should occur, but they did not substantively respond to the defendants' argument on that point. The court orders that notice be by first-class mail, and that a reminder notice by first-class mail may be sent 45 days after the initial mailing. *See, e.g.*, *Russell v. Wells Fargo & Co.*, No. C 07-3993 CW, 2008 WL 4104212, at *5 (N.D. Cal. Sept. 3, 2008) ("[N]otice by first class mail will be sufficient to assure that potential collective action members receive actual notice of this case.").

Fifth, the court denies the defendant's request to shorten the time collective members have from the date of initial mailing to opt in. Ninety days is appropriate. *See, e.g.*, *Brewer v. Gen. Nutrition Corp.*, No. 11-cv-03587 YGR, 2013 WL 100195, at *5 (N.D. Cal. Jan. 7, 2013).

---

[23] *See, e.g.*, Compl. – ECF No. 1 at 4 (¶ 14); Berry Decl. – ECF No. 16-5 at 2 (¶ 10).

[24] Notice, Ex. A to Terp Decl. – ECF No. 26-1 at 5.

1    Sixth, the court also denies the defendant's request to include its counsel's contact information

2    on the notice. *See, e.g.*, *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 847 (N.D. Cal. 2010)

3    (collecting cases).

4    Finally, for the reasons given by the plaintiffs, the court denies the defendant's requests for the

5    notice to specify that the plaintiffs' union is not participating in the case and that collective

6    members may have to pay the defendant's attorney's fees if they opt in and the defendant

7    prevails.[25]

## CONCLUSION

9    The court grants conditional certification. The parties must meet and confer to develop a

10   proposed notice that is consistent with this order. This resolves ECF No. 16.

11   **IT IS SO ORDERED.**

12   Dated: July 13, 2023

13                                        _____

14                                        LAUREL BEELER
                                          United States Magistrate Judge

United States District Court
Northern District of California

[25] Reply – ECF No. 26 at 7–8.