United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

ANTONIO LOERA, JR., et al.,

Plaintiffs,

v.

COUNTY OF ALAMEDA,

Defendant.

Case No. 23-cv-00792-LB

**ORDER GRANTING MOTION FOR FINAL APPROVAL**

Re: ECF No. 150

**INTRODUCTION**

The plaintiffs are Sheriff's Safety Aides who provide security at the Oakland International Airport for the Alameda County Sheriff's Office. They sued the County for unpaid off-the-clock work (a mandatory muster meeting fifteen minutes before each shift and a van ride from a distant parking lot). The parties settled the FLSA collective claims and the California minimum-wage class claims for a $650,000 non-reversionary fund.[1] The plaintiffs move, unopposed, for final approval, for attorney's fees of $162,500 (25% of the fund) and costs of $36,000, and for service awards of $15,000 to each named plaintiff.[2] After the original notice and a supplemental notice that cured the

---

[1] Mot. – ECF No. 150 at 12–14. Record citations are to the ECF-stamped page numbers at the top of filed documents.

[2] *Id.* at 12.

United States District Court
Northern District of California

late filing of the fee motion, no class member objected, and none opted out.[3] The court held the fairness hearing on November 12, 2026, grants the motion, finally certifies the settlement class, approves the settlement as fair, reasonable, and adequate, and awards the requested fees, costs, and service awards. To implement the settlement, the court adopts the operative paragraphs of the parties' amended proposed order, supplements them below, and will enter a separate judgment.[4] Because the County served the notices required by the Class Action Fairness Act only on November 12, 2026, this order and the judgment become final on February 16, 2027.

## STATEMENT

The court preliminarily approved the settlement on April 23, 2026: it found the Rule 23(a) and (b)(3) prerequisites met for a settlement class, appointed Antonio Loera, Jr. and Charlotte Daniels as class representatives and Rachel Terp and Sharon Vinick as class counsel, approved the settlement of the FLSA collective, approved the notice plan, and found the proposed settlement fair.[5]

On May 28, 2026, the settlement administrator, ILYM Group, mailed the court-approved notice packet (which disclosed the requested fees, costs, and service awards) to the 83 class members.[6] The deadline to object, opt out, or dispute workweeks was July 27, 2026. Eight packets came back undeliverable. ILYM skip-traced and successfully re-mailed seven, and re-mailed the eighth twice, the second time to a newly found address on August 28, 2026.[7] No class member objected or opted out. One disputed his or her reported workweeks. The County confirmed the reported figures through its records.[8]

Class counsel filed the fee motion on August 31, 2026, after the objection deadline. The court flagged the sequencing problem under *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988,

[3] Joint Report – ECF No. 157 at 2; Castro Suppl. Decl. – ECF No. 157-1 at 2–3 (¶¶ 6–7, 10).

[4] Am. Proposed Order – ECF No. 159 at 3–5 (¶¶ 1–12).

[5] Order – ECF No. 147 at 7, 9–11.

[6] Castro Suppl. Decl. – ECF No. 157-1 at 2 (¶ 2); Mot. – ECF No. 150 at 15 (mailing), 30 (the notice disclosed the requested fees, costs, and service awards).

[7] Castro Suppl. Decl. – ECF No. 157-1 at 2 (¶¶ 3–5).

[8] *Id.* at 2–3 (¶¶ 6–8).

993–95 (9th Cir. 2010), and, on the parties' stipulation, ordered a cure: a supplemental notice, a thirty-five-day objection period, and a continued fairness hearing.[9] ILYM mailed the supplemental notice to all 83 class members on October 1, 2026. The notice disclosed the requested fees, costs, and service awards, said where to get the fee motion and its supporting papers free of charge, and set a November 5, 2026 objection deadline.[10] None came back undeliverable, and no one objected.[11]

Under the settlement, the County pays $650,000 into a non-reversionary fund and separately pays the employer's share of payroll taxes and ILYM's $5,200 administration costs.[12] The net fund of $421,500 (after the requested fees, costs, and service awards) is split evenly between the 57-member FLSA collective and the 83-member class and is distributed pro rata by workweeks, with no claim forms. The average gross payments are $3,697.37 (FLSA) and $2,539.16 (class).[13] Anything the court declines to award as fees, costs, or service awards stays in the fund for the class. Checks are void after 180 days, and residual funds go to the East Bay Community Law Center as cy pres.[14] Class members release the pleaded claims and claims arising from the same facts. FLSA members release their FLSA claims by endorsing their settlement checks. The named plaintiffs give broader general releases, which is customary: Ms. Daniels a full general release, and Mr. Loera a general release with a narrow carve-out.[15]

## ANALYSIS

### 1. The Court Finally Certifies the Settlement Class

Nothing has changed since the court found the Rule 23(a) and (b)(3) prerequisites met at

---

[9] Order – ECF No. 154; Order – ECF No. 156.

[10] Suppl. Notice, Ex. B to Castro Suppl. Decl. – ECF No. 157-1 at 19–21.

[11] Joint Report – ECF No. 157 at 2; Castro Suppl. Decl. – ECF No. 157-1 at 3 (¶¶ 9–10).

[12] Mot. – ECF No. 150 at 17 (citing Settlement ¶¶ 13, 20, 35); Castro Suppl. Decl. – ECF No. 157-1 at 3–5 (¶¶ 12, 17).

[13] Mot. – ECF No. 150 at 17–18; Castro Suppl. Decl. – ECF No. 157-1 at 3–4 (¶¶ 12, 16).

[14] Castro Suppl. Decl. – ECF No. 157-1 at 3–4 (¶¶ 12, 16); Mot. – ECF No. 150 at 19 (amounts not awarded remain in the fund; checks void after 180 days, with residue to the cy pres recipient).

[15] Mot. – ECF No. 150 at 19 (citing Settlement ¶¶ 30–32). All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c)(1). Consents – ECF Nos. 8, 11.

preliminary approval.[16] The final count (83 class members, two fewer than estimated) does not affect numerosity: joinder of 83 security aides remains impracticable. The claims turn on uniform muster-meeting and van policies, so common questions predominate in the settlement context, where trial-manageability concerns drop out, and one class case is superior to 83 individual wage suits. The court therefore finally certifies the settlement class defined at preliminary approval and in the amended proposed order. The class consists of the 83 individuals on the administrator's final class list.[17] The court confirms the appointments of Mr. Loera and Ms. Daniels as class representatives and of Ms. Terp and Ms. Vinick as class counsel.

**2. Notice to the Class and to Government Officials Was Sufficient**

The notice program was the best practicable: individual first-class mail to every class member at addresses drawn from the County's records, skip tracing and prompt re-mailing of returns, and a settlement website with the key filings. Fed. R. Civ. P. 23(c)(2)(B), (e)(1); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993). Eighty-two of the eighty-three packets were delivered. The last was re-mailed twice, including to a newly found address, and the supplemental notice that was mailed to the same member was not returned.[18] Due process requires that effort, not actual receipt. *Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994).

The supplemental notice cured the fee-motion sequencing. Rule 23(h) entitles class members to object to the fee motion itself, so the objection deadline must follow the motion's filing. *Mercury*, 618 F.3d at 993–95. Here, the motion and its supporting declarations were on file and available to the class (free of charge through the settlement website and the administrator, and on the public docket) for thirty-five days before the renewed November 5 deadline.[19]

On November 12, 2026, the County provided the notices required by the Class Action Fairness

---

[16] Order – ECF No. 147 at 7.

[17] Castro Suppl. Decl. – ECF No. 157-1 at 3 (¶ 11); Mot. – ECF No. 150 at 15–16 (the class list built from the County's data).

[18] Castro Suppl. Decl. – ECF No. 157-1 at 2–3 (¶¶ 2–5, 10); Mot. – ECF No. 150 at 15.

[19] Suppl. Notice, Ex. B to Castro Suppl. Decl. – ECF No. 157-1 at 20.

United States District Court
Northern District of California

Act (CAFA), 28 U.S.C. § 1715, to the Attorneys General of the United States and California.[20] Because the court may not give final approval until ninety days after service, this order is held in abeyance and becomes final on February 16, 2027, as the Conclusion provides.[21]

**3. The Settlement Is Fair, Reasonable, and Adequate**

Rule 23(e)(2) permits approval only on a finding that the settlement is fair, reasonable, and adequate after considering the adequacy of representation, the negotiation, the relief, and the equity of treatment among class members. Fed. R. Civ. P. 23(e)(2)(A)–(D); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The court found the settlement fair at preliminary approval, and the full record confirms it.[22]

**Representation and negotiation.** The class representatives and counsel represented the class adequately: counsel are experienced wage-and-hour litigators who developed the claims through sixteen SSA declarations, roughly 19,000 pages of County records, and a consulting expert's damages model, and Mr. Loera and Ms. Daniels devoted about 75 and 30 hours to the case. The settlement followed a full-day mediation with Hon. Amy Hogue (Ret.) and months of negotiation over the long-form agreement.[23] The parties have identified no agreement other than the settlement. Fed. R. Civ. P. 23(e)(3).

**Relief.** The $650,000 fund is 41.5% of the plaintiffs' $1,563,479 best-day damages model and about 83% of the unpaid wages before liquidated damages. That is a strong result measured against real risk. Off-the-clock claims are hard to certify for trial because individual variation can defeat predominance. *Stone v. Alameda Health System*, 16 Cal. 5th 1040 (2024), eliminated the

---

[20] County Statement – ECF No. 165 at 2; Notice – ECF No. 168.

[21] 28 U.S.C. § 1715(d). CAFA's notice requirement applies because the settlement includes a Rule 23(b)(3) class of the California claims. *Id.* §§ 1711(2), 1715(b). Late notice does not defeat approval when the officials still receive the full ninety days. *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 972–73 (E.D. Cal. 2012). And an approval order may become final after the ninety-day period absent a noticed official's request for a hearing. *D.S. ex rel. S.S. v. N.Y.C. Dep't of Educ.*, 255 F.R.D. 59, 80 (E.D.N.Y. 2008).

[22] Order – ECF No. 147 at 9.

[23] Mot. – ECF No. 150 at 14–15 (counsel's investigation and the mediation), 34 (the representatives' hours).

PAGA claims against public entities mid-case, and summary judgment and trial carried ordinary merits risk. The relief also reaches beyond money: after the lawsuit was filed, the County ended the muster-meeting and van requirements and secured close-in parking.[24]

**Equitable treatment.** The payments are tethered to workweeks, so longer-tenured aides with larger claims recover more. The even split between the overlapping FLSA collective and the class balances the two sets of claims. No one must file a claim form to be paid.[25]

Because certification is for settlement only, the court also looks for subtler signs that self-interest shaped the deal. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011). None appears. The fee request is the 25% benchmark and is about half of counsel's lodestar. Any fees, costs, or service amounts the court declined to award would stay in the fund for the class: nothing reverts to the County. And the cy pres recipient takes only uncashed checks and serves low-wage East Bay workers, a fit with the claims.[26]

Finally, the class's reaction supports the outcome: across two notice rounds and two objection windows, with the requested fees, costs, and service awards disclosed both times, no class member objected, and none opted out.[27]

### 4. The Fees and Costs Are Reasonable

In a common-fund case, the court may award fees as a percentage of the fund, and 25% is the benchmark. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047–48 (9th Cir. 2002); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). The benchmark fits here. The results were strong in dollars and in practice, the claims carried genuine certification and merits risk, and counsel litigated for three and a half years on contingency, turning away other work.[28] A lodestar cross-

[24] *Id.* at 18, 25 (recovery percentages), 27 (certification risk and *Stone*), 14, 26 (practice change).

[25] *Id.* at 17–18, 26; Castro Suppl. Decl. – ECF No. 157-1 at 3–4 (¶¶ 12, 16).

[26] Mot. – ECF No. 150 at 19 (amounts not awarded remain in the fund; cy pres for uncashed checks), 30–31 (lodestar).

[27] Castro Suppl. Decl. – ECF No. 157-1 at 2–3 (¶¶ 6–7, 9–10).

[28] Mot. – ECF No. 150 at 25–29.

check confirms the award. Counsel logged more than 350 hours for a lodestar above $300,000, at rates courts in this district have approved, so the $162,500 request is a multiplier of roughly one-half. *Vizcaino*, 290 F.3d at 1050.[29] The $36,000 in costs (chiefly the consulting expert's work on the damages model, plus mediation, filing, notice, and research expenses) are the kind billed to paying clients and were necessary here. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).[30] The court awards $162,500 in fees and $36,000 in costs.

**5. The Service Awards Are Justified**

Service awards compensate class representatives for work done for the class and for the risks of suing. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009); *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). The requested $15,000 awards are large in relative terms: each is 2.3% of the fund (together, 4.6%), about three times the average net recovery of roughly $5,078, and about equal to the largest individual recovery of $14,094.16.[31] The record nonetheless supports them. Mr. Loera and Ms. Daniels spent about 75 and 30 hours on the case. They sued their current employer, with the risk that entails. They stayed with the case through three and a half years of litigation and production delays. Each gives a general release broader than the class release.[32] Both notices disclosed the exact amounts, and no class member objected.[33] Comparable awards are common in this district's wage cases. *E.g.*, *Villalpando v. Exel Direct Inc.*, No. 3:12-cv-04137-JCS, 2016 WL 7785852, at *2 (N.D. Cal. Dec. 9, 2016) ($15,000 to each of three representatives). The court approves the awards.

---

[29] *Id.* at 30–31.

[30] *Id.* at 31–32 (the expert compiled pay data the County produced piecemeal and built the damages model; the remaining costs are mediation, filing, notice, copying, postage, and research).

[31] Castro Suppl. Decl. – ECF No. 157-1 at 4 (¶ 12) (net fund of $421,500; the average is that fund divided by the 83 class members); Mot. – ECF No. 150 at 26 (largest recovery).

[32] Mot. – ECF No. 150 at 19 (release terms), 34 (hours, reputational risk, and the general releases).

[33] Suppl. Notice, Ex. B to Castro Suppl. Decl. – ECF No. 157-1 at 19–20; Castro Suppl. Decl. – ECF No. 157-1 at 3 (¶ 10).

United States District Court
Northern District of California

## CONCLUSION

The court grants the motion: it certifies the settlement class, grants final approval of the settlement, awards class counsel $162,500 in fees and $36,000 in costs, and approves service awards of $15,000 each to Mr. Loera and Ms. Daniels. To implement the settlement, the court adopts paragraphs 1 through 12 of the amended proposed order (ECF No. 159 at 3–5) as the operative terms of this order, supplemented as follows:

1. The settlement class consists of the 83 individuals on the administrator's final class list.

2. Within seven days after entry of this order and the judgment, the administrator must post both on the settlement website.[34]

3. The parties must file the post-distribution accounting that this district's Procedural Guidance for Class Action Settlements requires by October 4, 2027, which is twenty-one days after the settlement checks are projected to become stale under the settlement's distribution timeline.[35]

4. Under 28 U.S.C. § 1715(d), this order and the judgment are held in abeyance and become final on February 16, 2027, without further action by the court. If a noticed federal or state official objects or asks to be heard before then, the order and the judgment remain in abeyance, and the case will be restored to the calendar. The parties must promptly file any response that they receive from an official. As the parties agreed at the hearing, the settlement's Effective Date is the date this order becomes final, and the deadlines that depend on the Effective Date run from that date.

This order resolves ECF No. 150. The court will enter judgment separately.

**IT IS SO ORDERED.**

Dated: November 12, 2026

LAUREL BEELER
United States Magistrate Judge

[34] Mot. – ECF No. 150 at 2 (implementation schedule).

[35] *Id.* at 2–4 (funding, mailing, and accounting periods), 19 (180-day check validity).